**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **STEPHEN LOVECCHIO** | * | **CIVIL ACTION NO. 26-718** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **NEPSIS, INC., NEPSIS TAX ADVISORS, LLP, AND PELICAN ADVISORY LLC** | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |

\*    \*    \*    \*    \*    \*    \*    \*

## ORDER & REASONS

Before the Court is a Motion to Remand filed by Plaintiff Stephen Lovecchio. R. Doc. 14. Defendants Nepsis, Inc. and Nepsis Tax Advisors, LLP (collectively, the "Nepsis Entities") opposed the motion, R. Doc. 19, as did Defendant Pelican Advisory LLC ("Pelican"), R. Doc. 20. Plaintiff replied. R. Doc. 21. The Court heard oral argument on May 27, 2026. R. Doc. 31. Considering the argument, record, briefing, and applicable law, the Court now rules as follows.

## I.    BACKGROUND

This is a case about an alleged scheme to sell phony federal tax credits. Plaintiff brought this suit against Nepsis Entities and Pelican (altogether, "Defendants") after he purchased certain tax credits from them, attempted to claim them on his federal taxes, and, after claiming them on his federal taxes, was advised by the IRS that the credits did not exist. R. Doc. 1-2 at 3–4.

In essence, Plaintiff, on the recommendation of his CPA, consulted with Defendants— purported tax experts—about reducing his tax liability exposure. *Id.* Plaintiff sold his business in 2024 and incurred significant tax liability. *Id.* at 9. Plaintiff's accountant recommended he consult with Pelican[1] to inquire as to ways that he could reduce this exposure. *Id.* In the process of securing advice from Pelican, Pelican introduced Plaintiff and his agents to representatives of Nepsis

---

[1]    Pelican's website advertises that it advises high income/net worth individuals, business owners, and CPA firms on financial planning, including the reduction of tax liability. *Id.* at 8–9.

Entities.[2] *Id.* Plaintiff pleads that, upon information and belief, Nepsis Entiries and Pelican have a contractual arrangement to market and sell tax credits and/or to share in the fees/commissions earned for the sales of tax credits. *Id.* at 10. Thus, Defendants collectively pressed him to invest in certain tax credits. *Id.*

In working with Nepsis Entities and Pelican, Plaintiff relied on the companies' representations as tax and financial planning experts and trusted their advice. *Id.* at 8–10. Defendants' "advice" allegedly revolved around aggressively marketing that customers, like Plaintiff, could purchase tax credits at $0.60 per dollar, reflecting a 40% discount. *Id.* at 10–11. According to Plaintiff, "Defendants used high-pressure tactics to induce Plaintiff to invest in the tax credits, urging Plaintiff that he needed to act quickly before the credits either ran out or before the discount was reduced." *Id.* at 11. Defendants further persuaded Plaintiff to invest in these tax credits by claiming that they were "proofed by the treasury," "had been vetted and reviewed by professionals," "had been 'used successfully' by other taxpayers to receive refunds," that the "credits 'came off no problem,'" and "that there had been 'no issues with the IRS.'" *Id.* at 12. Thus, in reliance on Defendants' advice, Plaintiff invested $1.2 million in return for $2 million worth of tax credits. *Id.*

After Plaintiff filed certain federal tax documents, "[t]he tax authorities [] reported that the tax credits 'do not exist' and [] further advised that anyone [claiming] credits that do not exist [would be] subject to penalties and other punitive actions." *Id.* at 13. Therefore, Plaintiff not only lost his $1.2 million investment in illusory tax credits, but he was also saddled with penalties from taxing authorities. *Id.*

---

[2] Nepsis, Inc. is a national firm that provides financial and investment advice to high-net-worth individuals, families, and business owners. *Id.* at 8.

Plaintiff now brings claims against Nepsis Entities and Pelican for (1) breaches of fiduciary duties, (2) negligent misrepresentation, (3) violations of the Louisiana Securities Law, La. R.S. § 51:701 *et seq.*, (4) violations of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401 *et seq.*, (5) detrimental reliance, (6) conversion, (7) unjust enrichment, and (8) requests an accounting. *Id.* at 14–23. Plaintiff asserts that Defendants are liable to him in these ways because, for example, they owed him fiduciary and delictual duties and generally breached those duties, they knew or should have known that these tax credits were illegitimate, they held themselves out as financial experts and either were in on the scheme or ignored red flags that experts should have acknowledged, they pressured and induced him to invest, and they received significant financial gain from Plaintiff's loss. *Id.*

Plaintiff originally brought this suit, which facially asserts only state law causes of action, in the Civil District Court for the Parish of Orleans. *See* R. Doc. 1-2. Nepsis Entities removed this suit within 30 days of service of the citation based on *Grable/Gunn* embedded federal question jurisdiction. R. Doc. 1. The parties are not diverse, and no defendant alleges that any of Plaintiff's actions are truly federal actions in disguise that could give rise to traditional original federal question jurisdiction. *Id.*

## II.     PRESENT MOTION

Plaintiff now moves to remand this case because, contrary to Nepsis Entities' representations in their Notice of Removal, R. Doc. 1, his claims do not present a federal question that could give rise to federal jurisdiction. R. Doc. 14. Nepsis Entities removed this case based on the doctrine articulated by the Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) and refined by *Gunn v. Minton*, 568 U.S. 251, 258 (2013), which states that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily

3

raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Plaintiff insists that none of the four *Grable/Gunn* factors are present because his petition does not raise any federal law claims and any federal issues seemingly raised are either not substantial or are defenses—raised only by Defendants—to Plaintiff's claims, rather than elements of Plaintiff's claims in principle. R. Doc. 14-1 at 17–28.

Plaintiff acknowledges that Nepsis Entities cited two potential federal issues—federal securities law and federal tax law—as issues that could give rise to federal jurisdiction. *Id.* First, Plaintiff concedes that Louisiana courts, in analyzing Louisiana's own securities law, La. R.S. § 51:701 *et seq.*, will often use the federal test provided in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) in determining whether an instrument is a "security" under Louisiana law, since the Louisiana definition of "security" is modeled after the Securities Act of 1933. 18–19. But Louisiana courts routinely conduct this analysis, so Plaintiff takes the position that this does not raise a substantial enough federal question. *Id.* at 21–24. Second, Plaintiff presses that none of his theories of liability depend on an interpretation of the Internal Revenue Code, so this case does not implicate federal tax law in a way that gives rise to federal question jurisdiction. *Id.* at 26. Thus, overall, Plaintiff maintains that his claims, as pleaded, do not require any court to wrestle with a federal question when determining whether he proved his prima facie case for each of his theories of liability. *See generally id.* Therefore, federal jurisdiction cannot lie here.

Nepsis Entities oppose the motion. R. Doc. 19. They insist that a federal court must resolve the federal issues in this case because Plaintiff's claims require a court to consider whether "the tax credits qualify as securities under federal law" and whether "Defendants misrepresented the federal tax treatment of the tax credits." *Id.* at 10. Because these two issues are the central premises

4

of Plaintiff's theories of liability, Nepsis Entities argue that these substantial issues of federal law give rise to federal question jurisdiction in this case under *Grable/Gunn*. *Id.* at 10–15. With respect to federal securities law, Nepsis Entities take the position that a federal court should decide whether the tax credits constitute "securities" under the *Howey* test because, *inter alia*, the resolution of this question in a federal court promotes a uniform federal standard as to the treatment of these tax credits. *Id.* at 12, 18–19. As to federal tax law, Nepsis Entities insist that Plaintiff cannot, for example, prove his misrepresentation claim against Defendants without making a showing of what they knew or should have known about the Internal Revenue Code at the time that Defendants gave Plaintiff tax advice. *Id.* 14–17.

Pelican also filed an opposition. R. Doc. 20. It echoed many of Nepsis Entities' arguments and stressed that federal court jurisdiction is appropriate in this case because of the significance of the federal securities and tax questions in Plaintiff's claims. *Id.* Plaintiff replied to both oppositions, insisting that Defendants re-casted his well-pleaded allegations as ones that center around the treatment of the tax credits under federal law, when his allegations truly center around Defendants' material omissions and misrepresentations about the tax credits—allegations that strike at the heart of his state law-based theories of liability. R. Doc. 21.

## III.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). This Court "may not exercise that jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005). Because removal jurisdiction "raises significant federalism concerns," *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988), it is strictly construed and doubts regarding removal jurisdiction should be resolved against federal jurisdiction, *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.

5

2000). The party invoking removal jurisdiction bears the burden of establishing federal jurisdiction over the state court suit. *Baby Oil, Inc. v. Cedyco Corp.,* 654 F. Supp. 2d 508, 515 (E.D. La. 2009) (citing *Frank v. Bear Stearns & Company*, 128 F.3d 919, 921–22 (5th Cir. 1997)).

A defendant may remove a civil action if a federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). Thus, district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Cases "arise under" federal law in one of two ways. First, a plaintiff may plead a cause of action created by federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Second, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Said differently, a defendant may remove an action wherein only state law claims are pleaded because a plaintiff's state law claims necessarily require resolution of a substantial question of federal law. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 13 (1983). The Supreme Court has described these cases as a "slim" category. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (citing *Grable*, 545 U.S. at 313).

Whether a case arises under federal law depends on whether the plaintiff's complaint raises issues of federal law. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Under the well-pleaded complaint doctrine, the plaintiff is the master of her claim and may avoid federal jurisdiction by relying exclusively on state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987). Thus, federal jurisdiction generally will not lie if the plaintiff properly pleads only state law causes of action. *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008).

Relatedly, "[i]t is well-settled within this Circuit that when a plaintiff fails to affirmatively allege a federal claim, 'anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction.'" *Bernstein v. Atl. Richfield Co.*, No. 15-630, 2015 WL 3454740, at *2 (E.D. La. May 29, 2015) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008)). Thus, "merely suggesting that a defense may be raised that defendants were in compliance with federal regulations does not give rise to federal question jurisdiction." *See Riehm v. Wood Res.*, LLC, No. 16-12747, 2016 WL 6123372, at *4 (E.D. La. Oct. 20, 2016) (summarizing with approval *Gilbert v. Synagro Cent.*, LLC, No. 08-1460, 2008 WL 4542248, at *2–4 (E.D. Pa. Oct. 9, 2008)).

## IV.    DISCUSSION

Defendants insist that the allegations in Plaintiff's petition center around the federal tax treatment, and the federal securities-law classification, of the allegedly illusory tax credits at the heart of this case. R. Docs. 1, 19, 20. The Court disagrees. For the following reasons, the Court **GRANTS** Plaintiff's motion to remand.

### A.  The *Grable/Gunn* Inquiry Fails at the First Prong.

Because Plaintiff is the master of his complaint, he "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. It is undisputed that Plaintiff only advances state law causes of action in his petition. Therefore, federal jurisdiction can only lie if Nepsis Entities can show that the federal issue within a state law claim is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

Nepsis Entities removed this case, in part, by asserting that a federal issue is necessarily raised on the face of Plaintiff's petition. R. Doc. 1. A federal issue is "necessarily raised" if a

plaintiff's right to relief requires a resolution of the federal issue. *Tex. Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co., Inc.*, 380 F. Supp. 3d 580, 589–90 (E.D. Tex. 2019) (citing *Gunn*, 568 U.S. at 259). Nepsis Entities advance two arguments to support its position that Plaintiff's right to relief requires resolution of a federal issue: (1) that for Plaintiff to prevail on his Louisiana Blue Sky law claims, he will need to prove that the tax credits are considered securities under the federal *Howey* test, and (2) that for Plaintiff to prevail on his claims such as negligent misrepresentation and breaches of fiduciary duties, he will need to prove that Defendants' tax advice was improper or inconsistent with the Internal Revenue Code at the time that the advice was given. For the following reasons, the Court finds that neither of those legal issues are necessarily raised in any of Plaintiff's claims in a way that gives rise to federal jurisdiction.

### 1. Federal Securities Law Issues Not Necessarily Raised

Nepsis Entities argue that removal is proper because, to determine whether Plaintiff brings a successful Louisiana Blue Sky law claim, a court will need to assess whether the tax credits at issue here are "securities" under federal law. R. Docs. 1, 19. But in so arguing, Nepsis Entities oversimply the circumstances giving rise to this purported federal inquiry.

First, it is true that Louisiana's Blue Sky laws were modeled after federal law—namely, the Securities Act of 1933 and the Securities and Exchange Act of 1934. *Ek v. Nationwide Candy Div., Ltd.*, No. 8322 (La. App. 3 Cir. 7/22/81), 403 So. 2d 780, 785, *writ denied*, 407 So. 2d 732 (La. 1981). Though modeled after the two federal acts, the revised statutes provide an independent statutory definition of "security" without any reference to these federal acts. La. R.S. § 51:702(15). Even still, Louisiana courts utilize the *Howey* test and other federal court decisions because they, for example, "f[ound] a dearth of Louisiana case law pertaining to the" Blue Sky laws because

"[j]urisprudence in the area of Louisiana's securities laws" has been "relatively undeveloped." *Ek*, 403 So. 2d at 785. But the decision to turn to federal case law to inform a state court's understanding of what could constitute a "security" under the Louisiana Revised Statutes is an active choice made by Louisiana state courts—this Court finds no Louisiana Supreme Court case stating that Louisiana state court are bound to apply *Howey* to claims brought under their own Blue Sky laws. *See Godair v. Place of Vendome Corp. of Am.*, No. 93-1818 (La. App. 1 Cir. 12/22/94), 648 So. 2d 440, 444–45 (analyzing whether a promissory note was "security" under Louisiana law and utilizing *Reves v. Ernst & Young,* 494 U.S. 56 (1990)—not *Howey*—to assist in its analysis). Said differently, Louisiana courts *could choose* to rely on federal law, but need not do so, in order to determine what constitutes a "security" under La. R.S. § 51:702(15). Thus, it is not necessary for a court to resolve a federal issue in order for Plaintiff to prevail on his Louisiana Securities Law claim, so federal jurisdiction is not proper under *Grable/Gunn* on this basis.

Nepsis Entities cite a case from the Southern District of Florida that provides an example of a circumstance where a Plaintiff's complaint necessarily raises a question of federal law, unlike the petition at issue in this case. R. Doc. 19 at 13. In *Norris v. Brady*, a Florida federal district court denied a plaintiff's motion to remand when one of the plaintiff's counts "request[ed] a declaratory judgment pursuant to [Florida law] . . . 'seek[ing] an order declaring that the [instruments] are securities to be registered with the SEC and state regulatory authorities.'" 668 F. Supp. 3d 1257, 1262 (S.D. Fla. Apr. 4, 2023) (quoting the plaintiff's complaint). To that court, the declaratory judgment count, which would explicitly require a court to determine whether the instrument was a security required to be registered with the SEC, necessarily depended on the resolution of a substantial question of federal law—should that instrument have been registered with the SEC according to federal law. *Id.* at 1263.

9

That case provides a relatively straightforward example of a circumstance where a Plaintiff openly and plainly asks a state court to conduct an analysis of a federal law in order for the plaintiff to secure their requested declaration. *See id.* In this case, by contrast, Plaintiff asks a Louisiana state court to consider whether these tax credits constitute securities, as defined by La. R.S. § 51:702(15), which does not statutorily require Louisiana courts to reference or look to federal law in conducting the inquiry. Accordingly, there is no question of federal securities law necessarily raised in the petition.

### 2. Federal Tax Law Issues Not Necessarily Raised

Next, Nepsis Entities argue that a federal tax question is necessarily raised in Plaintiff's petition because his claims challenge the truthfulness of Defendants' representations about the treatment of these tax credits under federal law. R. Doc. 19 at 14. Citing, *inter alia*, *Hughes v. Chevron Phillips Chemical Company*, 478 F. App'x 167 (5th Cir. 2012), Nepsis Entities insist that a court cannot assess whether Defendants breached their fiduciary duties and misrepresented information to Plaintiff without turning to the Internal Revenue Code and evaluating whether Defendants' advice was given in accordance with a proper contemporaneous understanding of the Internal Revenue Code. For the following reasons, the Court disagrees.

In *Hughes*, the Fifth Circuit found that a plaintiff's complaint necessarily raised a federal question because "it would be impossible to determine whether [the defendants] breached their fiduciary duty to [the plaintiff] or interfered with his [employment] contract without deciding whether [the employer's] actions were governed by a valid administrative levy issued by the IRS." 478 F. App'x at 170. In that case, the plaintiff sued his employer under multiple state law theories of liability, alleging that they withheld portions of his wages after receiving a notice from the IRS to do so. *Id.* at 168. This notice allegedly stated that the IRS was issuing an administrative levy on

the plaintiff's earnings because he did not adequately pay his federal income taxes. *Id.* The defendants removed that case "on the basis that [the plaintiff's] pleadings indicated that he questioned the validity of the IRS administrative levy and the lawfulness of [the defendants'] compliance with the levy." *Id.* at 169. In finding that the case belonged in federal court, the Fifth Circuit reasoned that the question of whether the defendants breached their fiduciary duties or interfered with the plaintiff's employment contract "requires determining whether the IRS had the authority to issue an administrative levy on [the plaintiff's] unexempted wages, and whether [the IRS] followed the proper procedures in doing so." *Id.* at 170. That inquiry requires a court to consider federal law for the plaintiff to prevail on his case-in-chief. *See id.*

Nepsis Entities insist that Plaintiff's claims here are necessarily premised on a similar inquiry—whether, at the time Defendants provided the investment advice to Plaintiffs, their advice and representations about the tax credits comported with the Internal Revenue Code. R. Doc. 19 at 15. The Court disagrees and finds that the inquiry into whether Defendants' advice was aligned with federal tax law at the time is an inquiry more appropriately raised in a defense, not in Plaintiff's case-in-chief. *Bernstein*, 2015 WL 3454740, at *2 (quoting *Barrois*, 533 F.3d at 328). Additionally, and unlike the actions allegedly taken by the defendants in *Hughes*, Defendants' actions here—the misrepresentations and other alleged statements concerning the viability of the tax credits—were not executed at the request of the IRS or any other federal entity. *See* R. Doc. 1-2.

In this case, there is no need for a court to wrestle with a legal question that involves interpretation of federal tax law in order for Plaintiff to prove that Defendants made statements that resulted in tax consequences for Plaintiff. Plaintiff here centers his allegations around statements made by Defendants that were meant to seduce Plaintiff into purchasing the tax credits,

11

not that Defendants misrepresented the tax credits because they misunderstood federal tax law. For example, Plaintiff pleaded that Defendants told him that the tax credits were "proofed by the treasury," "had been vetted and reviewed by professionals," "had been 'used successfully' by other taxpayers to receive refunds," that the "credits 'came off no problem,'" and "that there had been 'no issues with the IRS.'" *Id.* at 12. Plaintiff then pleaded that he purchased the tax credits in reliance on these statements, and then when he claimed them on his federal taxes, the IRS told him the credits "do not exist" and saddled Plaintiff with penalties for attempting to claim false credits. *Id.* at 13.

Based on Plaintiff's well-pleaded allegations, it is clear to the Court that Plaintiff chose to frame his claims around theories of liability that challenge Defendants' affirmative actions and the consequences of those actions—actions that Plaintiff does not specify violated any provisions of the Internal Revenue Code, or were done pursuant to any sort of federal law or at any federal entity's direction. *See* R. Doc. 1-2. Therefore, Plaintiff's petition does not necessarily raise a federal issue because Plaintiff could make his case-in-chief through this factual showing, without reference to federal law. *In re Regions Morgan Keegan Sec.*, No. 10-2008, 2010 WL 2598242, at *4–5 (W.D. Tenn. June 24, 2010) ("Defendants intend to argue that they cannot have violated these statutes because they abided by all applicable federal regulations. . . . However, their proposed arguments are *defenses*."); *see Current v. Hous. Auth. of New Orleans*, No. 24-1883, 2024 WL 5041175, at *3 (E.D. La. Dec. 9, 2024) ("Three of [the] claims . . . were based on a lack of substantial evidence for the decision, which is a fact-based inquiry that does not involve the interpretation or application of federal law."); *see also id.* ("[The plaintiff] does not assert a cause of action under the VAWA regulation but used it as evidence that [the defendant's] decision was arbitrary and capricious. . . . Unlike *Grable*, [the plaintiff's] claims do not involve a dispute over

the meaning of a federal law or regulation."). Because Plaintiff's petition does not necessarily raise any questions of federal tax law, federal jurisdiction cannot lie for that reason.

### B. The Court Will Not Award Attorneys' Fees

Plaintiff's remand motion briefly requests an award attorneys' fees and costs incurred as a result of the removal. R. Doc. 14-1 at 28; 28 U.S.C. § 1447(c). Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has stated that "the standard for awarding fees should turn on the reasonableness of the removal," thus courts should grant fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). In this case, the Court finds that Defendants had an objectively reasonable basis to remove this case. The Court set oral argument to assist it in parsing out the nuanced legal arguments relevant to the "slim" category of cases encompassed by the *Grable/Gunn* doctrine. R. Doc. 24. Considering the narrow scope of this particular removal doctrine and the factual complexities of this case, the Court finds that an award of fees and costs is inappropriate here.

### V.    CONCLUSION

Accordingly;

**IT IS ORDERED** that Plaintiff's Motion to Remand, R. Doc. 14, is hereby **GRANTED**. This case is hereby **REMANDED** to the Civil District Court for the Parish of Orleans for further proceedings.

New Orleans, Louisiana, this 28th day of May, 2026.

_____
THE HONORABLE ELDON E. FALLON

13